IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

FRANK PAUL CAMPBELL                                              PETITIONER

VS.                              Case No. 3:21-cv-03064-MEF

DEXTER PAYNE, Director,
Arkansas Division of Correction                              RESPONDENT

## MEMORANDUM OPINION AND ORDER

Before the Court is the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody filed on August 30, 2021, by Petitioner, Frank Paul Campbell ("Campbell").  (ECF No. 1).  The Respondent, Dexter Payne, Director of the Arkansas Division of Correction, filed a Response to Petition for Writ of Habeas Corpus on September 28, 2021.  (ECF No. 8).  Campbell did not file a reply.  In accordance with the provisions of 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, both parties consented to the exercise of jurisdiction by a United States Magistrate Judge, and the case was referred to the undersigned by Order of Reference entered on January 20, 2022.  (ECF No. 9).  The matter is ripe for decision.

### I.      BACKGROUND

### A.  Procedural History

Based on an Affidavit for Warrant (ECF No. 8-1, pp. 17-18), a Bench Warrant (*Id.*, p. 19) was issued on June 9, 2014, for Campbell's arrest on a charge of Sexual Assault in the Second Degree, in violation of Ark. Code Ann. § 5-14-125, a Class B Felony.  The charge stemmed from a report made by Campbell's wife, Amy Campbell, that Campbell "had been messing with her daughters," fondling one minor daughter's buttocks through the blankets while she was sleeping, and that he had been writing her pornographic stories on the internet involving a girl and her

1

stepfather.  (*Id*., p. 17).  Campbell was arrested on June 9, 2014, and his first judicial appearance was held on June 11, 2014, at which time the Carroll County Public Defender was appointed to represent Campbell, and he was bound over to the Circuit Court of Carroll County, Arkansas for further proceedings.  (*Id*., pp. 19, 20).  Campbell was released on a $5,000.00 bond.  (*Id*., p. 21).

On June 30, 2014, a criminal Information was filed charging Campbell with two counts of Sexual Assault in the Second Degree, in violation of Ark. Code Ann. § 5-14-125, Class B Felonies. (ECF No. 8-1, p. 22).  Specifically, the Information charged that on or between 2011 and June 5, 2014, Campbell, being in a position of trust or authority, engaged in sexual contact with his minor stepdaughters, N. B., and E. B.  (*Id*.).  Campbell appeared with appointed counsel for arraignment on July 7, 2014.  He pleaded not guilty, and a jury trial was set the week of February 23, 2015. (*Id*., p. 25).

Attorney Chris Flanagin ("Flanagin") entered his appearance as retained counsel for Campbell on September 12, 2014.  (ECF No. 8-1, p. 31).

A pre-trial hearing was held on February 2, 2015.  (ECF No. 8-1, p. 42).  The jury trial setting on February 23, 2015, was vacated, and a pre-trial hearing was scheduled for March 16, 2015.  Speedy trial time from February 2, 2015, to March 16, 2015, was charged to Campbell. (*Id*.).  On March 16, 2015, the defense motion to continue the pre-trial status hearing was granted, and a pre-trial hearing was set for April 20, 2015.  Speedy trial time from March 16, 2015, to April 20, 2015, was charged to Campbell.  (*Id*., p. 43).  An Agreed Order entered on April 20, 2015, granted Campbell's motion to continue the case for pre-trial hearing on May 18, 2015, with the time excluded for speedy trial purposes.  (*Id*., p. 44).  A Pre-Trial Order entered on May 18, 2015, set a pre-trial status hearing on August 17, 2015, and a jury trial was scheduled for August 24-25, 2015.  (*Id*., p. 45).

On July 20, 2015, an Amended Information was filed against Campbell, charging him with two counts of Sexual Assault in the Second Degree, in violation of Ark. Code Ann. § 5-14-125, Class B Felonies; three counts of Sexual Indecency with a Child, in violation of Ark. Code Ann. § 5-14-110, Class D Felonies; and with being a Habitual Offender, in violation of Ark. Code Ann. § 5-4-401.  (ECF No. 8-1, pp. 46-47).  Campbell entered a plea of not guilty to the Amended Information on August 17, 2015, and the jury trial remained set to begin on August 24, 2015.  (*Id.*, p. 48).

## B.  Trial and Conviction

Evidence at trial showed that Campbell was married to Amy Campbell, who is the mother of the two victims, N. B., and E. B.  (ECF No. 8-2, pp. 143-44).  N. B., who was 18 years old at the time of trial in August 2015, testified that Campbell began touching her in ways that made her feel uncomfortable beginning the summer between her sixth grade and seventh grade years.  (*Id.*, pp. 193, 199).  The first time she felt that way, during that summer, she believed he had somehow caused her swimsuit to "move" while they were in a swimming pool, which made her feel "creepy."  (*Id.*, p. 199).  On another occasion, N. B. was getting out of the shower when she heard Campbell's ankles "pop," so she looked up and saw a camera phone in an opening between the bathroom wall and ceiling.  (*Id.*, p. 202).  She was scared because Campbell had taken a picture of her while she was naked.  (*Id.*, pp. 202-03).  At times, when N. B. would be sitting on the couch with her dog on her lap, Campbell would sit next to her, reach under the dog, and rub N. B.'s upper thigh.  (*Id.*, pp. 203-05).  Other times, Campbell would "turn his hand out to touch [her] butt" with his palm when he would walk by her.  (*Id.*, p. 206).

After Campbell attempted to take the picture of N. B. getting out of the shower, N. B. told a friend about it.  The two of them told the friend's mother.  (ECF No. 8-2, pp. 207-08).  The

friend's mother then told Amy Campbell about it, and N. B. talked to her mom about it.  (*Id.*, p. 209).  Amy did not seem to be upset.  (*Id.*, pp. 209-10).  N. B. testified that sometime later, Campbell told her that he "would never mean to do that" to her and that he would "keep his distance" from her.  (*Id.*, pp. 210-11).  The touching incidents continued, however, and Campbell began "grabbing" N. B.'s "boobs" and moving them as she would sit on the sofa with her dog.  (*Id.*, pp. 212-13, 215-16).

N. B.'s younger sister, E. B., who was 15 years old at the time of trial, testified that Campbell began touching her inappropriately when she was 13 years old.  (ECF No. 8-3, pp. 15-17).  She testified that Campbell made her feel uncomfortable whenever he came into her bedroom, "messed" with her bra strap, and "pulled at" her under the sheets.  Those incidents always occurred at night or in the early morning hours.  Campbell once pulled on her bra strap when she was napping on the living room couch.  Once, when she was sleeping on her stomach, he "groped" her butt by "feeling" and "squeezing" her buttocks.  (*Id.*, pp. 19-20).  Another time, when E. B. was in the kitchen, Campbell walked past her, turned the palm of his hand out, and "grabbed" her butt.  (*Id.*, pp. 22-23).  On another occasion, when E. B. was on the couch with her dog in her lap and a blanket over her legs, Campbell sat next to her, put his hand under the blanket, and moved his hand "a little too close to [her] crotch."  (*Id.*, pp. 28-29).  He pressed his fingers into her upper thigh as he moved his hand.  E. B. got up and left.  (*Id.*, p. 29).

E. B. testified that she had an account on Wattpad.  (ECF No. 8-3, p. 31).  She described Wattpad as a free app in which persons can post stories that they have written and read stories posted by others.  Users can also comment on stories that have been posted and send private messages to others who have accounts.  (*Id.*, pp. 30-31).  E. B. explained that she received a multi-chapter story "about a stepdaughter who wanted to explore sexual activities and a stepfather who

4

offered to explore them with her." (*Id.*, p. 70).  After reading part of the story, E. B. blocked the person who sent it. (*Id.*).  She noticed that the writer used commas rather than periods when typing an ellipsis, which was something she knew Campbell did from previous text messages he sent her. (*Id.*, pp. 70-71).  E. B. continued to receive messages from other accounts that she believed were from the same person who had sent her the story, and she blocked those accounts as well. (*Id.*, p. 72).

E. B. testified that sometime later she received a request to read another story that was sent by the same person using a different account. (ECF No. 8-3, p. 72).  E. B. decided that she wanted proof to confirm her suspicion that Campbell was the one who had sent her the two stories. (*Id.*, p. 73).  E. B. told N. B. about the stories, and N. B. took E. B. to the home of a friend to talk to the friend's mother about it.  The friend's mother asked Amy Campbell to come over to the house.  They told Amy about the story. (*Id.*, pp. 75-76).  Amy testified that she took a screenshot of the story on E. B.'s phone and sent it to her own phone.  She then emailed the story to the friend's mother so that she could print it.  Amy deleted the story from E. B.'s phone because she "didn't want her to have to view that." (ECF No. 8-2, p. 161).  Amy also emailed the story to Detective Daniel Crawford of the Berryville Police Department. (*Id.*, p. 162).

Detective Crawford read the story aloud at trial. (ECF No. 8-3, pp. 90-104; ECF No. 8-4, pp. 136-179).  The story was about a teenage girl named "Susan" who had a secret desire to explore her sexuality without forming an emotional attachment.  The story included sexually explicit passages. (ECF No. 8-3, p. 93).  The story described that Susan, in considering who she could share her desires with, eliminated male friends and relatives. (ECF No. 8-3, pp. 94-95).  Then after a lengthy, graphic description of Susan masturbating in the shower, the story stated that Susan went to bed, but was unable to sleep. (*Id.*, pp. 95-98).  Her stepfather entered her room during the

night and became erect while looking at Susan's "hard" nipples. (*Id.*, pp. 98-99). The portion of the story read by Det. Crawford ended with Susan contemplating the ramifications of that encounter. (*Id.*, pp. 99-104).

E. B. explained to the jury that her middle name is Susan, and that the "Susan" in the story participated in the same school activities she was involved in. (ECF No. 8-3, p. 78). E. B. described the story as "disgusting." (*Id.*).

Amy testified that she confronted Campbell about the story, and he initially denied writing it. (ECF No. 8-2, p. 164). The story referred to a vibrator as "the little friend" or "the little helper," which made Amy think that Campbell wrote the story, as did the story's use of the name "Susan" which is E. B.'s middle name, and that E. B. shared a lot of the same characteristics of the girl in the story. (*Id.*, pp. 162-63). After Amy threatened to go to the police about the story, she said Campbell admitted that he wrote the story and sent it to E. B. (*Id.*, pp. 165-66; *see also* p. 133, Campbell admitting that he wrote the story on his iPhone to Detective Crawford). Campbell also admitted to Amy that he had tried to take a photograph of one of the girls as she was getting out of the shower. (*Id.*, p. 166). He blamed his behavior on his pornography addiction. (*Id.*).

After hearing the testimony at trial, the jury convicted Campbell of two counts of Sexual Assault in the Second Degree and one count of Sexual Indecency with a Child. (ECF No. 8-1, pp. 49-51). The jury recommended a sentence of 12 years imprisonment on each conviction for Sexual Assault in the Second Degree, six years imprisonment on the conviction for Sexual Indecency with a Child, and the jury recommended that these sentences be imposed consecutively. (*Id.*, pp. 52-55). The Circuit Court adopted the jury's sentencing recommendations and sentenced Campbell to a total of 30 years imprisonment. The Sentencing Order was entered on September 4, 2015. (ECF No. 8-5, pp. 4-7).

### C. Direct Appeal and Post-Conviction Relief Proceedings

Appellate counsel, Tony Pirani, was retained with financial assistance from members of Campbell's family.  (ECF No. 8-6, p. 18).  Campbell raised two points on direct appeal: (1) that the trial court abused its discretion by permitting the State to introduce as evidence a DVD of Campbell's interview with police, the contents of certain electronic messages, and the content of two stories that were electronically sent to E. B.; and (2), that there was insufficient evidence to support his conviction for sexual indecency with a child.  (ECF No. 8-7; ECF No. 8-9, p. 1).  The Arkansas Court of Appeals rejected Campbell's arguments and affirmed his convictions.  (ECF No. 8-9).

Campbell then retained new counsel, Autumn Tolbert, and on April 21, 2017, Campbell filed a timely petition for post-conviction relief pursuant to Ark. R. Crim. P. 37.1.  (ECF No. 8-10, pp. 13-22).  Campbell raised seven ineffective assistance of counsel claims: (1) counsel was ineffective by representing an adverse witness during the pendency of Campbell's trial and by allowing that witness to be present during attorney/client meetings; (2) counsel was ineffective by failing to properly move for directed verdict to preserve a review of the sufficiency of the evidence; (3) counsel was ineffective by not moving for a severance of the charges, to quash the amended information, or to request a continuance; (4) counsel was ineffective by not obtaining a forensic evaluation of Campbell in order to consider a defense of not guilty by mental disease or defect; (5) counsel was ineffective for failing to object to prejudicial and inadmissible testimony, failing to request a curative instruction or a mistrial after objections were sustained, and failing to object and move for a mistrial during closing arguments; (6) counsel was ineffective for failing to interview witnesses, failing to call certain witnesses, and to investigate the case; and (7), counsel was ineffective for failing to convey a plea offer.  (*Id*.).  By Order entered on September 26, 2017,

grounds one, four, and five were denied without hearing.  (ECF No. 8-10, pp. 72-74).  Upon Campbell's motion (*Id.*, pp. 87-88), Circuit Judge Scott Jackson recused from the case on May 10, 2018 (*Id.*, p. 89), and the Honorable Gary Arnold, of the 22nd Judicial Circuit, was appointed by the Arkansas Supreme Court to hear the case (*Id.*, p. 90).

An evidentiary hearing on the remaining grounds was held on August 31, 2018.  (ECF No. 8-10, pp. 121-207; ECF No. 8-11, pp. 3-204).  Judge Arnold denied all Rule 37 relief by Order entered on September 13, 2018.  (ECF No. 8-10, p. 118).  Campbell appealed.  (*Id.*, pp. 119-20).  The Arkansas Court of Appeals reversed and remanded for the circuit court to enter findings of fact and conclusions of law in accordance with Ark. R. Crim. P. 37.3(c).  (ECF No. 8-14).

Following the remand, and in compliance with Rule 37.3(c), Judge Arnold entered an Amended Order Denying Rule 37 Relief on November 27, 2019.  (ECF No. 8-15, pp. 9-12).  Campbell appealed, arguing that his trial counsel was ineffective by: (1) representing his wife simultaneously as him, which created a conflict of interest; (2) failing to object or seek a mistrial during the State's closing argument; (3) failing to make a proper direct-verdict motion for the sexual-indecency-with-a-child charge; (4) failing to properly investigate and interview witnesses; and (5) failing to seek to sever or quash the amended information or to seek a continuance.  (ECF No. 8-16, pp. 74-88).  The Arkansas Court of Appeals rejected Campbell's arguments and affirmed the denial of postconviction relief.  (ECF No. 8-18).

### D.  Current § 2254 Petition

Campbell filed his Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody in this Court on August 30, 2021.  (ECF Nos. 1, 1-1).  The petition raises five claims[1], which are summarized as follows: (1) denial of his right to a speedy trial; (2) trial counsel

---

[1] Campbell lists only two grounds in his § 2254 Petition, denial of a speedy trial and ineffective assistance of counsel, but he asserts four claims of ineffective assistance of counsel.

was ineffective for failing to question Det. Crawford and his wife, Amy Campbell, about Det. Crawford's threatening and intimidating behavior toward Amy to get her to testify against Campbell; (3) trial counsel was ineffective for failing to seek a continuance after the Amended Information was filed; (4) trial counsel was ineffective for failing to object or ask for a mistrial during the state's closing argument; and, (5) trial counsel was ineffective for failing to make a proper directed-verdict motion. (*Id*.).

Respondent denies that Campbell is entitled to a hearing in this Court or to habeas corpus relief. (ECF No. 8). More specifically, Respondent argues that Campbell's petition should be denied because his claims are not cognizable, procedurally defaulted, or the state court rulings denying his claims are entitled to deference because they were reasonably adjudicated on the merits. (*Id*., pp. 9-22).

## II.    DISCUSSION

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall be entertained only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). Before seeking federal habeas review, a state prisoner must exhaust available state remedies, giving the state the opportunity to correct alleged violations of a prisoner's federal rights, "which means he must 'fairly present' his claim in each appropriate state court to alert that court to the claim's federal nature." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); 28 U.S.C. §§ 2254(b) and (c) (requiring state prisoner seeking federal habeas relief to exhaust all remedies available in the state courts). When a habeas petitioner fails to raise his federal claims in state court, he deprives the state of "an opportunity to address those claims in the first instance" and frustrates the state's ability to honor his constitutional rights. *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman v. Thompson*,

501 U.S. 722, 732 (1991)).  Therefore, when a habeas petitioner defaults his federal claims by failing to raise them in state court in compliance with the relevant state procedural rules, federal habeas review is barred unless the petitioner can demonstrate "cause" for the default and "actual prejudice" resulting from the alleged violation of federal law, or alternatively, demonstrate that failure to consider his claims will result in a fundamental miscarriage of justice.  *Id*.; *Coleman v. Thompson*, 501 U.S. at 750.

A thorough review of Campbell's § 2254 petition and the record in this case conclusively shows that Campbell's claims are not cognizable in this federal habeas action, are inexcusably procedurally defaulted, unsupported by the record, and were fairly and reasonably adjudicated on the merits in state court.  For the reasons discussed below, Campbell's § 2254 petition shall be dismissed with prejudice.

### A.      Claims One and Three – Speedy Trial Rights

Campbell first claims that his right to a speedy trial was violated, stating "I was intentionally denied my right to a speedy trial."  (ECF No. 1, p. 5).

He notes that he appeared for arraignment on July 7, 2014, and upon pleading not guilty, his case was set for trial on February 23, 2015.  (ECF No. 1-1, p. 1).  This lengthy delay, he asserts, was the result of Circuit Judge Kent Crow having lost an election in May 2014, so Judge Crow "immediately begun scheduling every case for trial on the same day so the docket would be back-logged for the new judge when he took over."  (*Id*.).  Campbell alleges he told Flanagin that he was innocent and intended to fight the charges, and that he did not want to wait until February 2015.  Flanagin allegedly said he would see what he could do, presumably to advance the trial date, but that Flanagin did nothing.  (*Id*., p. 2).

The sequence of events Campbell really complains of began seven months later, when he

appeared for a pre-trial status hearing on February 2, 2015. (ECF No. 8-1, p. 42). He states the courtroom was packed and "they all got continued and not once was the speedy trial time charged to the state." (ECF No. 1-1, p. 2). As his case was called, the prosecutor handed Flanagin an offer for a plea agreement. (*Id*.). Flanagin informed the court that the defense had just been presented with an offer for a plea agreement and that they needed time to consider it. (*Id*., p. 3). The record shows that the trial setting on February 23, 2015, was vacated, and a pre-trial hearing was scheduled for the following month on March 16, 2015. Speedy trial time from February 2, 2015, to March 16, 2015, was charged to Campbell. (ECF No. 8-1, p. 42). Campbell states, "[i]n March the same thing happened … the judge set a new pre-trial hearing for April and charged the speedy trial time to me." (ECF No. 1-1, p. 3). The record confirms that on March 16, 2015, a defense motion to continue the pre-trial status hearing was granted, and another pre-trial hearing was set for April 20, 2015. Speedy trial time from March 16, 2015, to April 20, 2015, was charged to Campbell. (ECF No. 8-1, p. 43).

Campbell alleges that Flanagin called him on the Friday before the pre-trial hearing set for April 20, 2015, and he told him that the prosecutor was not going to be able to be there, so they continued it until May. (ECF No. 1-1, p. 3). Campbell states that he told Flanagin that he was tired of continuances, and that he wanted Flanagin to make sure the speedy trial time was charged to the state because it was their delay. (*Id*.). An Agreed Order was entered on April 20, 2015, indicating that it was granting "the oral motion of the Defendant Frank Campbell," and the case was rescheduled for pre-trial hearing on May 18, 2015, with the time excluded for speedy trial purposes. (*Id*., p. 44).

Campbell and Flanagin appeared for the pre-trial hearing on May 18, 2015. Flanagin requested a trial setting "possibly in mid-July or so." (ECF No. 8-1, p. 84). The Prosecutor

indicated having a conflict in July, and when the Circuit Judge proposed August 24-25, 2015, she stated she had another trial on those dates, and "I don't mind going into September, if the defense takes the time." (*Id*., pp. 85-86).  The Circuit Judge then proposed September 23-24, 2015.  The record reflects that Flanagin then conferred with Campbell (outside of the hearing of the Court Reporter), then he asked if the court might have a trial date in mid-June.  (*Id*., p. 86).  The Prosecutor stated that she had a jury trial in mid-June, and the court pointed out to Flanagin, "so do you." (*Id*.).  The Circuit Judge proceeded to set a pre-trial conference on August 17, 2015, with a jury trial to be held on September 22-23, 2015.  (*Id*., p. 87).  Flanagin then asked, "was the time charged to the defense?" (*Id*., p. 88).  He noted that, "the defense just doesn't have a pending motion," to which the Prosecutor responded, "well then let's set it in August." (*Id*.).  A discussion of speedy trial time ensues, with the Prosecutor noting that Campbell's arrest was on June 9, 2014, and that there is some excluded time.  The Circuit Judge stated that the time from February 2, 2015, through May 18, 2015, was excluded, and the case was then scheduled for jury trial on August 24-25, 2015.  (*Id*., pp. 88-89).  The Pre-Trial Order entered on May 18, 2015, originally set the jury trial for September 22-23, 2015, but these dates are struck through and August 24-25, 2015, is written in.  The Pre-Trial Order also originally charged the speedy trial time from May 18, 2015, to September 22, 2015, to the defense, but this was also struck through.  (*Id*., p. 45).

On July 20, 2015, an Amended Information was filed against Campbell, charging him with two counts of Sexual Assault in the Second Degree, three counts of Sexual Indecency with a Child, and with being a habitual offender.  (ECF No. 8-1, pp. 46-47).  Campbell entered a plea of not guilty to the Amended Information on August 17, 2015 (*Id*., p. 48), and as previously noted, a jury trial was held on August 24-25, 2015, resulting in Campbell's convictions and sentences.

In his § 2254 petition, Campbell now asserts that Flanagin "didn't even argue the new

charges," "he didn't ask for discovery," he "could have asked for a continuance and the speedy trial time charged to the state because the new charges changed the nature of our defense strategy," and "this would have put the speedy trial time over the limit … the case would have been dismissed with a bar from further prosecution" (ECF No. 1-1, p. 6). He also points to Flanagin's testimony during the Rule 37 evidentiary hearing that "we had already decided that we weren't going to let this case go to speedy trial"[2] as an admission that Flanagin was "working with the judge and prosecutor to deny me my speedy trial rights." (*Id.*).

Campbell's § 2254 petition does not specify whether he is asserting his right to speedy trial under Arkansas law, Ark. R. Crim. P. 28.1, or under the Sixth Amendment to the United States Constitution. If Campbell is asserting a violation of his right to a speedy trial under Ark. R. Crim. P. 28.1, he is not entitled to federal habeas relief because the claim is not cognizable in federal court. *See Poe v. Caspari*, 39 F.3d 204, 207 (8th Cir. 1994) ("Violation by state officials of a state speedy trial law, taken alone, does not present a federal claim reviewable on habeas petition."); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

Further, whether based on the Sixth Amendment or Rule 28.1, a stand-alone claim of a speedy trial violation is procedurally defaulted because Campbell failed to raise either claim in state court on appeal, and he has neither alleged nor shown cause and prejudice, or a fundamental

---

[2] Flanagin's actual testimony was the following: "… but Judge Crow somewhat jeopardized the docket after he lost the election and started setting all these cases out. And so, speedy trial on cases was something that I know that the prosecutor's office had looked at. The - - the new judge had looked at. And it wasn't really something that I was going to - - it wasn't a basket that I was going to put all my eggs in. This - - it - - it was known, and this case wasn't going to be one based on a speedy trial violation." (ECF No. 8-11, p. 61).

miscarriage of justice, to excuse the procedural default.

Additionally, while Campbell's post-conviction counsel asked questions of Flanagin during the Rule 37 hearing regarding the speedy trial issue, suggesting that Flanagin should have obtained Campbell's consent before taking the speedy trial time on the several continuances granted, Campbell's Rule 37 petition (ECF No. 8-10, pp. 13-22) asserted no claim of ineffective assistance of counsel against Flanagin for denial of Campbell's speedy trial rights.  The issue was raised only tangentially through Campbell's assertion that, upon the State's filing of the Amended Information, Flanagin should have moved for a severance of the charges or requested a continuance and that the court assess the speedy trial time to the state.  He raises that same claim again in this habeas proceeding.  On that point, the Arkansas Court of Appeals held, "[Campbell] contends that the continuance would have benefitted him because it would have created speedy-trial issues for the State, but his claims concerning speedy trial and who the time would be charged to are conclusory and without citation to authority."  (ECF No. 8-18, p. 10).  Thus, that aspect of Campbell's speedy trial claim was adjudicated on the merits in the state court proceedings, and from an examination of the record, this Court cannot say that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

Campbell's speedy trial claim, if based on Arkansas law, is not cognizable in this federal habeas proceeding, and if based on the Sixth Amendment to the United States Constitution, has been procedurally defaulted.  Campbell's claim of ineffective assistance of trial counsel, for failing to seek either a severance of the charges or to request a continuance and have the speedy trial time charged to the State following the State's filing of an Amended Information, has been reasonably

adjudicated on the merits in state court, and the state court's decision is entitled to deference pursuant to 28 U.S.C. § 2254(d).

**B.       Claim Two – Failure to Question Detective Crawford and Amy Campbell**

Among his other claims of ineffective assistance of counsel is Campbell's complaint that Flanagin did not question Detective Crawford or Amy Campbell about Detective Crawford's allegedly intimidating and threatening behavior toward Amy.  (ECF No. 1-1, p. 14).

The claim arises from Campbell's assertion that Detective Crawford filed a false police report, falsely stating that both minor victims reported to him that Campbell had been inappropriately touching them for years, and falsely stating that Campbell admitted to the allegations when Amy Campbell confronted him about it. (ECF No. 1-1, p. 9).  He states the police and prosecuting attorney then refused to speak with Amy for over a year, preventing Amy from telling them that the police report was false.  (*Id*.).  He and Amy reportedly told Flanagin early in the case that Detective Crawford had falsified the police report, but Flanagin took no action.  (*Id*., p. 12).  Detective Crawford then allegedly approached Amy about one month before trial and wanted to go over her testimony, and he wanted to do so "outside of town on a Saturday." (*Id*., p. 13).  According to Campbell, Amy went straight to Flanagin's office and told Flanagin, who was meeting with Campbell at the time, what just happened, and that Detective Crawford was trying to get her outside of his jurisdiction and on his day off "so he could threaten and intimidate her into changing her testimony concerning my case and especially the falsified police report." (*Id*.).  Campbell faults Flanagin for not questioning Amy at trial about the police report or the attempted coercion, and that he did not question Detective Crawford at all.  (*Id*., p. 14).  The claim is procedurally defaulted.

Procedurally defaulted claims are "contentions of federal law which were not resolved on

the merits in the state proceeding due to [a federal habeas petitioner's] failure to raise them as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). A federal habeas petitioner must show that he "has exhausted the remedies available in the courts of the State" as a precondition to seeking relief under the federal habeas statute. 28 U.S.C. § 2254(b)(1)(A). A claim that is procedurally defaulted is considered to rest upon an adequate and independent state ground and is thus insulated from federal habeas review. *Clay v. Norris*, 485 F.3d 1037, 1039 (8th Cir. 2007) (citing *Coleman*, 501 U.S. at 732).

In Arkansas, claims of ineffective assistance of counsel must be raised in a timely petition for post-conviction relief pursuant to Ark. R. Crim. P. 37.1. *Muhammad v. State*, 2020 Ark. 47, at *5, 592 S.W.3d 242, 246 (2020); *Newton v. State*, 2014 Ark. 538, at *3, 453 S.W.3d 125, 127 (2014) (per curiam). After his conviction and sentence were affirmed on direct appeal, Campbell timely filed a petition for post-conviction relief under Ark. R. Crim. P. 37.1. (ECF No. 8-10, pp. 13-22). As noted above, Campbell raised seven ineffective assistance of counsel claims in his Rule 37 petition, but he did *not* claim that trial counsel was ineffective for failing to question Detective Crawford or Amy Campbell about Detective Crawford's allegedly intimidating and threatening behavior toward Amy. Ark. R. Crim. P. 37.2(b) provides: "All grounds for relief available to a petitioner under this rule must be raised in his or her original petition unless the original petition was denied without prejudice. Any ground not so raised … may not be the basis for a subsequent petition." Thus, since Campbell failed to raise "both the factual and legal premises" of this specific ineffective assistance of counsel claim to the Rule 37 court, *see Flieger v. Delo*, 16 F.3d 878, 884 (8th Cir. 1994) (emphasis omitted), and Arkansas law prohibits the filing of a subsequent Rule 37 petition, *see Newton v. State*, 2014 Ark. 538, at *3, Campbell's claim concerning Flanagin's failure to question Detective Crawford and Amy Campbell about Detective

16

Crawford's allegedly intimidating and threatening behavior toward Amy is procedurally defaulted.

Campbell's procedural default can be excused if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Thomas v. Payne*, 960 F.3d 465, 474 (8th Cir. 2020) (quoting *Coleman*, 501 U.S. at 750)).  Campbell, however, does not allege facts in his § 2254 petition to demonstrate cause and prejudice or actual innocence to excuse the procedural default.

Nor does *Martinez v. Ryan*, 566 U.S. 1 (2012) excuse Campbell's procedural default of this claim.  Under *Martinez*, a petitioner may establish cause for a procedural default if post-conviction counsel ineffectively failed to include a "substantial" claim of trial ineffectiveness in the state's initial-review collateral proceeding.  A year after its *Martinez* decision, the Supreme Court in *Trevino v. Thaler*, 569 U.S. 413, 429 (2013), again made clear that ineffective assistance of post-conviction relief counsel, if proven, can constitute cause for failing to raise an ineffective-assistance-of-trial-counsel claim in an initial-review collateral proceeding.  *See also Sasser v. Hobbs*, 735 F.3d 833, 853 (8th Cir. 2013), and *Dansby v. Hobbs*, 766 F.3d 809, 834 (8th Cir. 2014). "A federal court is allowed to find 'cause,' thereby excusing a habeas petitioner's procedural default in Arkansas, where (1) the claim of ineffective assistance of trial counsel was a 'substantial' claim; (2) the 'cause' consisted of there being 'no counsel' or only 'ineffective' counsel during the state collateral review proceeding; and (3) the state collateral review proceeding was the 'initial' review proceeding with respect to the 'ineffective-assistance-of-trial-counsel claim.'" *Dansby*, 766 F.3d at 834 (citing *Trevino*, 569 U.S. at 423).  "A 'substantial' ineffective-assistance claim is one that has some merit." *Id*. (citing *Martinez*, 566 U.S. at 14).  Stated another way, an ineffective assistance of counsel claim is not "substantial" if "it does not have any merit or … is wholly

without factual support." *Martinez*, 566 U.S. at 16.   And post-conviction counsel cannot be ineffective for failing to raise a meritless claim.  *McLaughlin v. Precythe*, 9 F.4th 819, 833 (8th Cir. 2021).

First, Campbell does not allege in his § 2254 petition that his post-conviction counsel was ineffective for failing to raise this specific ineffective-assistance-of-trial-counsel claim in the Rule 37 proceedings.   Campbell was clearly aware of the factual circumstances concerning this ineffective-assistance-of-trial-counsel claim well before his Rule 37 proceedings, but he makes no allegations that his post-conviction counsel either ignored his instructions to raise the claim, or that she otherwise strayed from "the wide range of reasonably professional assistance" in failing to assert the claim.  Instead, he raises this ineffective-assistance-of-trial-counsel claim for the very first time in his § 2254 petition with no explanation, and no stated facts, to support why cause exists to excuse his procedural default of the claim.

Next, in considering whether the claim is sufficiently "substantial" to excuse the procedural default, Campbell fails to demonstrate that Flanagin's decision regarding the cross-examination of Detective Crawford or Amy Campbell amounted to deficient performance under the *Strickland* standard.   During his testimony at the Rule 37 hearing, Flanagin characterized Detective Crawford's involvement as "kind of limited," in that he brought Defendant in and asked him some questions, and otherwise, "the girls made their statements."  (ECF No. 8-11, p. 94).   Flanagin recalled that Amy Campbell conveyed to him her belief that Detective Crawford "may not have been accurate" in some of his reports, but Flanagin testified that in his opinion how accurate Crawford was, or was not, was not very helpful, "because Crawford's not going to be getting up here to testify to hearsay of what the girls said.  The girls would have to get up and testify to what they had to testify to."  (*Id*.).  So, in Flanagin's strategic view of the case, "making it a faulty

investigation type case was not a winning theory," because "the girls were going to have to take the stand, and it'd be based on what - - what the jury believed." (*Id.*, p. 95).

The cross-examination of a witness is a delicate task, and courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel. *Henderson v. Norris*, 118 F.3d 1283, 1287 (8th Cir. 1997) (citing *Barnes v. United States*, 859 F.2d 607, 608 (8th Cir. 1988)); *Ford v. United States*, 917 F.3d 1015, 1024 (8th Cir. 2019) (counsel did not act unreasonably in declining to cross-examine witness). As the court in *Henderson* observed: "there are a few, if any, cross-examinations that could not be improved upon. If that were the standard of constitutional effectiveness, few would be the counsel whose performance would pass muster." *Id.* (citing *Willis v. United States*, 87 F.3d 1004, 1006 (8th Cir. 1996)). A careful review of the record convinces this Court that Flanagin's decision not to question Detective Crawford or Amy Campbell about the allegedly falsified police report or the attempted coercion was not constitutionally deficient.

Moreover, there is no showing of any prejudice from Flanagin's decision not to pursue such cross-examination. Campbell has not shown that had Flanagin pursued such cross-examination that the outcome of the trial would have been different. Both minor victims, N. B. and E. B., testified at trial that Campbell had touched them in a sexual manner on multiple occasions. (ECF No. 8-2, pp. 203-207, 213-222; ECF No. 8-3, pp. 15-29). E. B. also testified about receiving a sexually suggestive story on Wattpad, a computer app, involving "a stepdaughter who wanted to explore sexual activities and a stepfather who offered to explore them with her." (ECF No. 8-3, p. 70). E. B. testified that an unusual grammar error (use of three commas instead of three periods in an ellipsis) caused her to think Campbell had sent the story to her because he was the only person that she knew to use commas in an ellipsis. (*Id.*, pp. 70-71). She testified that

she received a second story about a girl named "Susan" (E. B.'s middle name) who participated in all the same extracurricular activities (as E. B.), and who wanted to explore sexual activities, but not with the immature boys at school, and who asked her stepfather to do it.  (*Id.*, p. 78).  E. B. testified she felt she had enough proof at that point; she did not care if her mother did not believe her; she was going to do something about it, and she did.

Flanagin characterized the minor victims' testimony on the stand as "extremely impressive," noting that "[j]urors cried during [N. B.'s] testimony as to wanting to – to protect her little sister and her feeling like she did not"; that E. B. was "extremely articulate … just very articulate and direct"; and "[t]here was no indication based on gestures, body language, or otherwise, that they were lying or padding the truth."  (ECF No. 8-11, 51-52).

The evidence against Campbell at trial was overwhelming, and the Court fails to see how any additional cross-examination of Detective Crawford or Amy Campbell would have altered the powerful and credible testimony of the minor victims.  Accordingly, Campbell's ineffective-assistance-of-trial-counsel claim for Flanagin failing to question Detective Crawford or Amy Campbell about the allegedly falsified police report or the attempted coercion is not sufficiently "substantial" to excuse the procedural default.

**C.    Campbell's Remaining Claims Were Adjudicated on the Merits in State Court**

When a state court has adjudicated a claim on the merits, a writ of habeas corpus "shall not be granted" with respect to that claim unless the adjudication resulted in a decision that was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *See* 28 U.S.C. § 2254(d)(1), (2); *Harrington v. Richter*, 562 U.S. 86, 101 (2011) ("a

state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision") (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

The phrases "contrary to" and "unreasonable application" have independent meaning. *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000) (O'Connor, J., concurring). A state court's decision is "contrary to" clearly established federal law when it arrives at an opposite conclusion of law than the Supreme Court of the United States, or it reaches a result opposite to that of the Supreme Court in a case involving materially indistinguishable facts. *Id*. at 405-06. A state court's decision involves an "unreasonable application" of the law where the court identifies the correct legal rule governing the claim at issue but unreasonably applies it to the facts of the case, or where the court unreasonably extends or refuses to extend the governing rule to a new context. *Id*. at 407.

Specifically, a state court's application of clearly established federal law must be objectively unreasonable, and not merely incorrect, for deference to be withheld. *See Richter*, 562 U.S. at 101 ("For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law.") (internal quotation omitted) (emphasis in original). In other words, before obtaining habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103. This standard is "difficult to meet," *Richter*, 562 U.S. at 102, and is "highly deferential," demanding that "the state-court decisions be given the benefit of the doubt." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam). A state court's determination of fact must be presumed correct if fairly supported by the state-court record. *See*

28 U.S.C. § 2254(e)(1).

In his § 2254 petition, Campbell claims that Flanagin should have objected or asked for a mistrial when the prosecuting attorney argued in closing, "don't assume this is the first time Frank has ever done anything like this," and when she told the jury they should "send a message to Frank that he cannot have sex with little girls." (ECF No. 1-1, p. 17). He also faults Flanagin for failing to make a proper motion for directed verdict. (*Id*.). He previously raised these claims in the Rule 37 proceedings in state court. (ECF No. 8-10, pp. 15-16, 19-20). On appeal from the denial of Rule 37 relief, the Arkansas Court of Appeals correctly identified the two-prong *Strickland* standard applicable to ineffective assistance of counsel claims and reasonably adjudicated the merits of these claims. (ECF No. 8-18). Its decision is neither contrary to, nor an unreasonable application of, federal law to the facts of this case.

### 1. Failure to Object or Move for a Mistrial During the State's Closing Argument

In his Petition for Postconviction Relief under Rule 37, Campbell argued that Flanagin was ineffective when he failed to object, or to request a mistrial or a curative instruction, when the prosecutor made two inflammatory and objectionable statements during closing argument. (ECF No. 8-10, pp. 19-20). The prosecutor's statements Campbell claimed Flanagin should have been objected to are:

> "Now's the time to stand up and look Frank Campbell in the face and say, 'We adhere to society's rituals. You don't get to have sex with little kids.'" And,

> "Do not assume, because you didn't hear something bad about his past in here, that there isn't anything there. Okay? We're talking about facts that were presented to you. Those are the things that you're going to rule on."

(*Id*., p. 19). Campbell contended that if counsel had objected to these statements, he "likely would have been found not guilty on at least one of the counts and/or would have received a more lenient sentence." (*Id*., p. 20). This is virtually the same argument Campbell now makes in his § 2254

petition.  (ECF No. 1-1, p. 17).

Flanagin testified during the Rule 37 hearing that he typically does not object during closing arguments "unless it rises to a certain level," and he also considers that an objection, even discretely made, may draw more attention to the statement.  (ECF No. 8-11, pp. 125-127).  And because of the way the prosecutor finished her statement about the jury not hearing "something bad about his past in here," i.e., "we're talking about the facts that were presented to you" and "those are the things that you're going to rule on," Flanagin did not feel the prosecutor's statements "get up to that level."  (*Id.*, p. 127).  Regarding the prosecutor's statement that the jury should tell Campbell, "You don't get to have sex with little kids," Flanagin knew that the story Campbell sent to E. B. was about having sex with a little girl, and that although inflammatory, he thought the prosecutor's statement was based on evidence that had been presented at trial.  (*Id.*, pp. 128-129).

In its Amended Order Denying Rule 37 Relief (ECF No. 8-15, pp. 9-12), the trial court addressed the merits of Campbell's claim, finding that Campbell failed to offer evidence that Flanagin's failure to object, move for a mistrial, or move for a curative instruction would have changed the outcome of the trial.  (*Id.*, p. 10).  The trial court noted Flanagin's testimony that his decision not to object, request a curative instruction, or move for a mistrial was a strategic choice not to draw more attention to the statements.  (*Id.*).  It also noted that the jury was given the standard instruction that statements by counsel are not evidence.  (*Id.*).  The trial court concluded that Campbell failed to show that Flanagin's decision was an error and not a strategic choice; that he failed to demonstrate a likelihood of success "of any said motions"; and that "no prejudice can be proved by the remarks in question."  (*Id.*).

Campbell appealed from the trial court's denial of post-conviction relief, and the Arkansas Court of Appeals also rejected Campbell's ineffective-assistance-of-trial-counsel claim related to

the prosecutor's statements during closing argument.  In its Opinion delivered October 21, 2020

(ECF No. 8-18), the Arkansas Court of Appeals stated, in pertinent part, the following:

> When it is alleged that counsel was ineffective for the failure to make a motion or an argument, the petitioner must show that the motion or argument would have been meritorious because the failure to make an argument that is meritless is not ineffective assistance of counsel.  *Blackwell v. State*, 2017 Ark. App. 248, 520 S.W.3d 294.  A reversal of a judgment due to remarks made by counsel during closing arguments is rare and requires that counsel make an appeal to the jurors' passions and emotions.  *Houghton v. State*, 2015 Ark. 252, 464 S.W.3d 922.  Experienced advocates might differ about when, or if, objections are called for since, as a matter of trial strategy, further objections from counsel may result in comments seeming more significant to the jury.  *Id.*  Because many lawyers refrain from objecting during opening statement and closing argument, absent egregious misstatements, the failure to object during closing argument and opening statement is within the wide range of permissible professional legal conduct.  *Howard v. State*, 367 Ark. 18, 238 S.W.3d 24 (2006).  Here, the circuit court found that [Campbell] had failed to demonstrate that counsel's decision not to object was an error and not a strategic choice as counsel testified.  The court further found that [Campbell] had failed to demonstrate that any motions had a likelihood of success or that he suffered any prejudice.  (*Id.*, p. 18).

> Counsel testified that based on the way the prosecutor finished the statement quoted above, it did not rise to the level to warrant his objecting and drawing more attention to the statements.  [Campbell] recognizes counsel's reasoning but contends that after "numerous inflammatory statements," "it crosses from strategy to ineffective assistance."  [Campbell's] allegations are conclusory and are not supported by convincing argument or citation to authority.  *Turner v. State*, 2016 Ark. 96, 486 S.W.3d 757.  Furthermore, we do not recognize cumulative error in allegations of ineffective assistance of counsel.  *Id.*  Accordingly, [Campbell] has failed to show that counsel's failure to object fell outside the wide range of permissible professional legal conduct.  (*Id.*, p. 19).

> [Campbell] argues that the remark about "sex with little kids" improperly appealed to the jurors' passions and emotions because he was not charged with having sex with children.  Although [Campbell] was not charged with having sex with the teenage victims, he was charged with engaging in sexual contact with them and with soliciting a thirteen-year-old child to engage in sexual intercourse, deviate sexual activity, or sexual contact.  The supreme court has held that "send a message" themes from the prosecutor in closing arguments are not improper.  *Lard v. State*, 2014 Ark. 1, 431 S.W.3d 249.  Considering the conduct with which [Campbell] was charged, we hold that the message regarding "sex with little kids" is not an egregious misstatement.  (*Id.*, p. 20).

> Furthermore, as in *Houghton*, *supra*, the jury here was instructed that

24

remarks made during closing arguments are not evidence and to disregard any argument, statements, or remarks of the attorneys that had no basis in the evidence. We hold that the circuit court did not err in finding that [Campbell] failed to demonstrate defective representation that prejudiced his defense such that he was deprived a fair trial. (*Id.*).

As the Arkansas Court of Appeals discussed in its Opinion, Flanagin testified he did not object to the prosecutor's statements during closing argument because he did not want to draw more attention to the statements. It found Campbell's argument, that after "numerous inflammatory statements" it "crosses from strategy to ineffective assistance," to be conclusory and unsupported by convincing argument or citation to authority, and that Campbell had failed to show that Flanagin's failure to object or take other action fell outside of the wide range of permissible legal performance. Flanagin's decision not to object to the prosecutor's statements in closing argument was clearly a strategic decision, and it is well settled that "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 690). Courts also "do not use hindsight to question counsel's performance," but instead must analyze it according to counsel's situation at the time of the allegedly incompetent act or omission. *Kenley v. Armontrout*, 937 F.2d 1298, 1303 (8th Cir. 1991).

Campbell has failed to demonstrate that the adjudication of this claim by the Arkansas courts resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or that it resulted in a decision based on an unreasonable determination of the facts in the light of the evidence presented in the state court proceedings. He has failed to show that the Arkansas Court of Appeals' ruling on this claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Consequently, federal habeas

relief on this claim is precluded.

### 2. Failure to Make a Proper Motion for Directed Verdict

Campbell also asserted a claim in his Petition for Postconviction Relief under Rule 37 that Flanagin was ineffective by failing to properly move for directed verdict and preserve a review of the sufficiency of the evidence on the count of sexual indecency with a minor. (ECF No. 8-10, pp. 15-16). He argued there was insufficient evidence that the sexually explicit story sent to his stepdaughter was an actual solicitation to engage in sexual activity as required by the statute and jury instruction, and that Flanagin's failure to make a proper motion for a directed verdict on that charge prevented a sufficiency of the evidence argument on direct appeal. (*Id.*, p. 16).

On direct appeal, Campbell did challenge the sufficiency of the evidence to support his conviction for sexual indecency with a child under Ark. Code Ann. § 5-14-110. (ECF No. 8-7, pp. 3, 6, 7, 55-58; ECF No. 8-9, p. 1). The Arkansas Court of Appeals noted that at the conclusion of the State's case, trial counsel argued "[t]here are three counts of sexual indecency with a child and we would assert there is insufficient evidence for those three counts," but that no specific element of the offense was challenged. (ECF No. 8-9, p. 3). It was also noted that the trial court agreed with defense counsel's argument that the three counts of sexual indecency with a child were "duplicative," but that the trial court denied Campbell's motion for directed verdict on one count of sexual indecency with a child. (*Id.*). The Court of Appeals mentioned that trial counsel renewed his motion for directed verdict at the close of all the evidence as to the single count of sexual indecency with a child, adding that the State had failed to prove "solicitation" since the story sent to E. B. did not request or ask E. B. to do anything sexual. (*Id.*). Touching on Campbell's point on appeal that the State's evidence lacked sufficient proof that he "solicited" E. B., the Court of Appeals found "this argument is not preserved for appellate review" as it lacked the requisite

26

specificity when made at the close of the State's case.  (*Id.*, pp. 3-4).

Not much testimony on this claim was developed during the State court post-conviction relief proceedings.  When asked during the Rule 37 hearing if he had a directed verdict motion typed out, written out, or if he would do it just "off the cuff," Flanagin testified that he does not make a lot of notes, that he is more of "an outline person," and that the directed verdict motion would have been based on whether there were any specific factors to raise.  (ECF No. 8-11, pp. 90-91).  At the Rule 37 stage of the proceedings, the issue before the trial court was not whether a proper motion for directed verdict had been made – the Arkansas Court of Appeals had already ruled that a proper motion for directed verdict had not been made – but whether a proper motion for directed verdict would have had any likelihood of success.  In denying post-conviction relief on this claim, the trial court concluded that Campbell failed to show that a motion for directed verdict was likely to succeed, and that failure to make a meritless motion is not grounds for Rule 37 relief.  (ECF No. 8-15, p. 10).

The Arkansas Court of Appeals considered the issue again, this time on appeal from the trial court's denial of post-conviction relief under Rule 37.  It explained its reasoning as follows:

> To prevail on a claim of ineffective assistance of counsel on the basis of counsel's failure to preserve an issue for appeal, a petitioner must show that, had the issue been preserved, the appellate court would have reached a different decision. *Strain v. State*, 2012 Ark. 42, 394 S.W.3d 294.  In the case of a directed-verdict motion, the petitioner must demonstrate that the appellate court would have found that the evidence adduced at trial was insufficient to support a conviction and would have overturned the conviction for that reason. *Id.*

> [Campbell] fails to address the evidence and explain why it was insufficient to support his conviction.  He states only that the evidence was "not sufficient." This argument is conclusory and cannot be the basis for postconviction relief. *Kauffeld*, *supra*.  When an appellant does not allege in what regard the circuit court's rulings on ineffective-assistance claims were clearly erroneous, his arguments fail. *Flemons v. State*, 2016 Ark. 460, 505 S.W.3d 196.

(ECF No. 8-18, pp. 7-8).

Campbell now asserts an identical claim in this § 2254 proceeding, arguing that "[a]t some point during the trial [Flanagin] waived my directive (sic) verdict."   (ECF No. 1-1, p. 17). Campbell says he did not know what that was, or what it meant, and he does not remember him doing it, but that he learned later that "[Flanagin] had waived my right to appeal."   (*Id*.).

This claim has been fully and fairly adjudicated in Arkansas courts.   Campbell did challenge the sufficiency of the evidence to support his conviction for indecency with a child on direct appeal, but the Arkansas Court of Appeals found that Flanagin's motion for directed verdict lacked the requisite specificity when made at the close of the State's case and that the issue had not been properly preserved for review on appeal.   Campbell then raised a claim in his Rule 37 petition that Flanagin's failure to make a proper motion for directed verdict was constitutionally deficient.   The trial court conducted a Rule 37 hearing and concluded that Campbell failed to show that a motion for directed verdict had any likelihood of success, and that failure to make a meritless motion is not grounds for Rule 37 relief.   The Arkansas Court of Appeals agreed.

As the Arkansas Court of Appeals discussed in its Opinion, Campbell had to show that the appellate court would have reached a different decision had the issue been preserved for appeal. This required Campbell to demonstrate that the appellate court would have found the evidence presented at trial to be insufficient to support a conviction, and that it would have overturned the conviction for that reason.   The Arkansas Court of Appeals held that Campbell failed to meet this standard.   He failed to address the evidence and explain why it was insufficient to support his conviction, stating only that the evidence was "not sufficient."   Such a conclusory allegation was found to be inadequate to support a claim of ineffective assistance of counsel.

Based on a careful and thorough review of the record, this Court finds that the Arkansas courts' adjudication of Campbell's claim did not result in a decision that was contrary to, or

involved an unreasonable application of, clearly established federal law, or that it resulted in a decision based on an unreasonable determination of the facts in the light of the evidence presented in the state court proceedings, and Campbell is not entitled to federal habeas relief on this claim.

### III.    CONCLUSION

For the reasons and upon the authorities discussed above, Campbell's claims are not cognizable in this § 2254 federal habeas action, they are inexcusably procedurally defaulted, are unsupported by the record, and were fairly and reasonably adjudicated on the merits in state court.

IT IS, THEREFORE, ORDERED that Campbell's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (ECF No. 1) is DISMISSED WITH PREJUDICE.  Judgment will be entered separately.

IT IS SO ORDERED on this 23rd day of August 2022.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE